UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION

CHAPTER 7 DEBTOR:

G.L.A.D. ENTERPRISES, LLC, : CASE NO.: 22-35425-CGM

*Debtor/Plaintiff* :

v. :

DEUTSCHE BANK, CATIC, GEORGE WOLF, :
OCWEN LOAN SERVICING NKA PHH, AND
CHRISTIAN H. DRIBUSCH, TRUSTEE, :

*Creditor/Defendant* : FEBRUARY 23, 2023

COMPLAINT
ADVERSARY PROCEEDING

FIRST COUNT

1. The Plaintiff/Debtor, ***G.L.A.D. Enterprises, LLC*** (hereinafter "***G.L.A.D.")***, owns real property located at 963 Fence Row Drive, Fairfield, Connecticut. ***Glenn Manigault*** is a Member of ***G.L.A.D.***, and has been since before this alleged debt.

2. The debtor contends that there are issues of identity theft and fraud that should be litigated in this Court, and not in the Connecticut state courts. The Debtor's member feels he cannot get a fair trial in the Connecticut state courts.

3. The Defendant/Creditor, ***Deutsche Bank and Ocwen Loan Services*** claims to own a note and mortgage secured by Debtor's real property. The Debtor's member contends that he holds the Note.

4. The subject loan was originally going to be in the individual name of Glenn L. Manigault, a member of G.L.A.D. His personal social security number

and credit were fraudulently used and misused for this loan application, and were

the subject of an Affidavit of ID theft filed with the IRS by Glenn L. Manigault,

which resulted in a finding of "Identity Theft", attached hereto as Exhibit "A". At

some point before closing, the lender switched the borrower to G.L.A.D. In fact,

after the loan closed the lender realized that they had disbursed a loan to a

borrower who did not own the property. The lender then asked the closing

attorney, George Wolfe, to obtain a Quit Claim Deed back to G.L.A.D. This Quit

Claim Deed was back dated to December 22, 2005 executed approximately 30

days after closing, and the Quit Claim Deed was recorded at that time. Copy of

Quit Claim Deed with recording information is attached as Exhibit "B".

     5.     The Debtor's member told the Trustee about the fraud during the

meeting of creditors and indicated that he would like to bring an adversary

proceeding in this Court against the original lender, its closing attorney and the

title insurance company. It will be noted on the applicable schedules. The title

insurance policy is in the name of Glenn L. Manigault, not G.L.A.D. because

originally it was Glenn L. Manigault individually who applied for the loan, and

whose credit was used. At some point, the lender issued loan documents to

G.L.A.D. and Glenn L. Manigault signed as a member of G.L.A.D., not

individually. Again, the title insurance policy was issued to Glenn L. Manigault,

not G.L.A.D., because Glenn L. Manigault owned the subject property. Copy of

Title Insurance Declaration attached as Exhibit "C". The after-closing Quit Claim

Deed was either the lender or its counsel's attempt to put title in the name of

G.L.A.D. some 30 days after closing. Glenn L. Manigault was unaware of what

transpired, so he signed the Quit Claim Deed at counsel's request to G.L.A.D. Enterprises, LLC, but it was invalid and ineffective due to fraud, both in the execution – it was dated before the closing December 22, 2005, executed some 30 days later in front of only the closing attorney, while it recites two witnesses, and was recorded January 31, 2006 shortly after it was signed – and it was induced by a fraudulent intent..

6. Additionally in direct contradiction to the motion for Relief from Stay, Glenn L. Manigault contends that he is in possession of the original note in this matter. Copy of Original Note attached hereto as Exhibit "D". Also, see Affidavit of Identity Theft for explanation. See Exhibit "E". Glenn L. Manigault will be happy to testify as to how he obtained the original Note. A Note is a bearer instrument and whoever holds the Note can foreclose. See Generally UCC Article 3, 3-108 and 3-109. In fact, Glenn L. Manigault filed a counter claim and Lis Penden in Connecticut State Court seeking title to the subject property. See Exhibit "F".

7. The Note and Mortgage were obtained by fraud and misrepresentation in that:

A. The credit, income, and assets used to approve the loan at issue was ***Glenn Manigault's*** individually, not ***G.L.A.D.'s***.

B. After the loan was closed on December 23, 2005, the Mortgage in the name of ***G.L.A.D. Enterprises, LLC*** was recorded on the land records on December 29, 2005. The property was owned by ***Glenn Manigault*** at that time.

C. A Quit Claim Deed was executed by ***Glenn Manigault*** to the Debtor, G.L.A.D. Enterprises, LLC, on or about January 30, 2006 and was subsequently recorded on January 31, 2006. ***G.L.A.D***. did not own the property when the Mortgage was executed and recorded.

D. The Quit Claim Deed is invalid as there was only one witness present at the time of signing, and it was induced and executed by fraud.

E. The Creditor, ***Deutsche Bank***, fraudulently obtained the subject loan from American Home Mortgage Acceptance Co, Inc., without approval of the Bankruptcy Court having jurisdiction over that entity.

8. The Mortgage and Lien of the Creditor ***Deutsche Bank*** is invalid and unenforceable as to the subject real property.

9. The Debtor seeks a Declaration that the Debtor owns the subject real property free and clear of the Creditor's Mortgage Lien and Promissory Note.

**SECOND COUNT**

1-9. Paragraphs 1-9 are repeated and realleged.

10. On or about December 29, 2005, Connecticut Attorneys Title Insurance Co., "CATIC" issued a policy of title insurance to American Home Mortgage Acceptance Co., Inc. in connection with the Mortgage refinance subject of this Action.

11. The title insurance policy is in the name of Glenn L. Manigault, as owner, not G.L.A.D. because originally it was Glenn L. Manigault individually who applied for the loan, and whose credit was used. At some point, the lender

issued loan documents to G.L.A.D. and Glenn L. Manigault signed as a member of G.L.A.D., not individually. Again, the title insurance policy was issued to Glenn L. Manigault, not G.L.A.D., because Glenn L. Manigault owned the subject property. Copy of Title Insurance Declaration attached as Exhibit "C".

12. CATIC certified and insured that at the time of closing ***Glenn Manigault*** was the vested title owner of the subject property.

13. CATIC issued a loan policy to American Home Mortgage Acceptance Co,Inc. certifying ownership was in the name of ***Glenn Manigault*** not ***G.L.A.D. Enterprises, LLC***, the alleged Mortgagor, and insuring the subject loan for American Home Mortgage Acceptance Co, Inc.

14. On January 31, 2006, a Quit Claim Deed was allegedly executed by ***Glenn Manigault***, who was fraudulently induced by George Wolf, Esq., to execute same conveying title to ***G.L.A.D.***

15. If the Mortgage is an enforceable Lien against the subject property, then CATIC is liable therefore, not ***G.L.A.D. Enterprises, LLC***.

**THIRD COUNT:**

1-15. Paragraphs 1-15 are repeated and realleged.

16. At all relevant time hereto, George Wolf, Esq. was an attorney, who represented ***Glenn Manigault*** and American Home Mortgage Acceptance Co., Inc. and was also CATIC's Title Agent. George Wolf, Esq. executed the Title Policy on behalf of CATIC.

17. George Wolf was negligent or careless and/or acted fraudulently in his representation of Glenn Manigault, American Home Mortgage Acceptance

Co., Inc. and CATIC in that George Wolf allowed the transaction to close when the mortgagor G.L.A.D. Enterprises, LLC was not the record owner of the subject property.

18.    On January 30, 2006, George Wolf called Glenn Manigault into his office under false pretenses to execute a document allegedly "missed" at the closing of December 23, 2005, a Quit Claim Deed from Glenn Manigault to G.L.A.D. George Wolf back dated the Quit Claim Deed to December 22, 2005, and had Glenn Manigault sign the document on January 30, 2006, and George Wolf recorded the Quit Claim Deed on January 31, 2006.

19.    The after-closing Quit Claim Deed was either the lender or its counsel's attempt to put title in the name of G.L.A.D. some 30 days after closing. Glenn L. Manigault was unaware of what transpired, so he signed the Quit Claim Deed at counsel's request to G.L.A.D. Enterprises, LLC, but it was invalid and ineffective due to fraud, both in the execution – it was dated before the closing December 22, 2005, executed some 30 days later in front of only the closing attorney, while it recites two witnesses, and was recorded January 31, 2006 shortly after it was signed – and it was induced by a fraudulent intent..

20. The Quit Claim Deed recorded on January 31, 2006 was defective and invalid because;

    A.    It was executed in the presence of only one witness;

    B.    It was back dated;

    C.    It was induced by fraud.

**FOURTH COUNT**:

1-20. Paragraphs 1-20 are repeated and realleged.

21. At all times relevant hereto, the debtor owns real property located at 6 Ulbrick Lane, Westport, Connecticut.

22. Creditor Deutsche Bank claims to own a mortgage and note securing said property.

23. That mortgage originated with American Home Mortgage Acceptance Co., Inc.

24. The mortgage is invalid and unenforceable, because American Home Mortgage Acceptance Co., Inc. was unauthorized. Deutsche Bank improperly acquired the subject loan from American Home Mortgage Acceptance Co., Inc. because it was not authorized by the Bankruptcy Court having jurisdiction.

**FIFTH COUNT**:

1-24. Paragraphs 1-22 are repeated and realleged.

25. The acts and practices of Defendant Deutsche Bank and its agents, including George Wolf are unfair and deceptive acts and practices in a business and constitute unfair trade practices within the meaning of the Connecticut Unfair Trade practice Act, Connecticut General Statute 42-110(a) et seq.

**SIXTH COUNT**:.

1-25. Paragraphs 1-23 are repeated and realleged.

26. Christian H. Dribusch is the duly appointed Chapter 7 Trustee in G.L.A.D.'s Bankruptcy proceeding and is a necessary party to this action.

**THE DEBTOR,**
**G.L.A.D. Enterprises, LLC**

By:______________________

Kenneth A. Beck, Esq.
Beck & Beck, LLC
83 Booth Street
Stratford, CT 06614
Tele.: (203) 375-2222
Fax: (203) 378-5263
E-mail: beckandbeck@sbcglobal.net
Fed. Bar #: KB4848

EXHIBIT "A"



 | Notice | [redacted] |
| --- | --- |
| Notice date | May 23, 2022 |
| To contact us | 800-908-4490 |
| Your Caller ID | [redacted] |
| Page 1 of 2 | [redacted] |

Department of the Treasury
Internal Revenue Service
Fresno, CA 93888-0025

023445.435594.98147.738 1 AV 0.426 370

GLENN L MANIGAULT
963 FENCE ROW DR
FAIRFIELD CT 06824-7004

023445

# We verified your identity theft documents

We have placed an identity theft indicator on your account.

If we become aware of fraudulent activity related to your tax account, we will contact you to advise of any actions that may be required on your part.

Identity theft is a serious issue and we're committed to helping taxpayers who are affected by it.

## What you need to do

- Continue to file all federal tax returns.
- If you have a balance owed, continue sending your payments.

## You may also want an IP PIN

- To increase protection of your account from tax-related identity theft, you can request an Identity Protection Personal Identification Number (IP PIN) by creating an online account at www.irs.gov/getanippin.
- An IP PIN is a six-digit number used on a federal income tax return that helps us verify your identity and prevents the misuse of your Social Security number (SSN) on fraudulent returns. A missing or incorrect IP PIN prevents the electronic filing of a tax return, and a paper return filed with a missing or incorrect IP PIN will be subject to additional review.
- Requesting an IP PIN is voluntary. If you get an IP PIN, you must use it to confirm your identity on any tax returns filed during the calendar year. A new IP PIN will be generated each year and can be retrieved starting in mid-January by logging into the account you created. If you choose to participate in the IP PIN program, you must use an IP PIN on all future tax returns. You can find more information on www.irs.gov/ippinfaqs.

Continued on back...


## Additional information

- Visit www.irs.gov/cp01c for more information on your notice.
- Review Publication 5027, Identity Theft Information for Taxpayers at www.irs.gov/forms-pubs or by calling 800-TAX-FORM (800-829-3676).
- Call us at the number shown above if you have questions.
- Keep this notice for your records.
- If you had a fraudulent return filed as part of your identity theft claim, you may request a redacted copy (one with some information blacked out) of the fraudulent return that was filed and accepted using your name and SSN. For more information go to IRS.gov and search "copy return".

The IRS does not initiate contact with taxpayers by email, text messages, or social media channels to request personal or financial information. This includes requests for PIN numbers, passwords, or similar access information for credit cards, banks, or other financial accounts. For additional information visit www.irs.gov/phishing

**Other resources**

- Visit the Federal Trade Commission at www.identitytheft.gov.
- Visit the Social Security Administration at www.ssa.gov and search keywords "identity theft."

# EXHIBIT “B”

001058

STATUTORY FORM OF QUIT CLAIM DEED

GLENN LEE MANIGAULT of the Town of Fairfield, County of Fairfield and State of Connecticut for consideration of less than One ($1.00) Dollar grants to G. L. A.D. ENTERPRISES, L.L.C. a Connecticut Limited Liability Company with QUIT CLAIM Covenants

ALL THAT CERTAIN piece or parcel of land with the buildings and improvements thereon, situated in the Town of Fairfield, County of Fairfield and State of Connecticut more particularly referred to as "Lot A" as shown on a certain map entitled "Resubdivision for ARM Properties, Inc., Fairfield, Conn. January 19, 1988, "Scale 1"= 60' prepared by the Huntington Company, Fairfield, Connecticut and recorded as Map 5701 of the Fairfield Land Records.

Signed this 22nd day of December, 2005

Witnessed by:

George Wolf

Myra Kirkland

Glenn Lee Manigault

STATE OF Connecticut
ss: Trumbull December 22 2005
COUNTY OF FAIRFIELD

Personally appeared GLENN LEE MANIGAULT, as aforesaid, signer of the foregoing instrument, who acknowledged the same to be his free act and deed before me.

George Wolf
Commissioner of the Superior Court

RECEIVED FOR RECORD

JAN 3 1 2006 AT 1:40P M
ATTEST: [signature]
TOWN CLERK

"No Conveyance Tax collected
[signature]
Town Clerk of Fairfield"

# EXHIBIT “C”

# C A T I C®

Connecticut Attorneys Title Insurance Company

| Policy No. | Amount of Insurance | Date of Policy |
|---|---|---|
| MP- 2203101 | $5,200,000.00 | 12/23/2005 |
| Insert 1 of 3 | | As to Insert One |
| Member Name | | Member No. |
| George Wolf | | 002617 |

## MORTGAGEE TITLE INSURANCE POLICY

### SCHEDULE A - As to Insert One

JAN 27 2006

1. Name of Insured: American Home Mortgage Acceptance, Inc.
It's successor and/or assigns, as their interest may appear
520 Broadhollow Road
Melville, NY 11747

2. The estate or interest in the land which is covered by this policy is fee simple unless box is checked below.

☐ Leasehold Estate (See Attached Leasehold Endorsement)

3. Title to the estate or interest in the land is vested in:

Glenn Manigault

4. The insured mortgage and assignments thereof, if any, are described as follows:

Mortgage from Glenn Manigault
to American Home Mortgage Acceptance, Inc.
in the principal amount
of $5,200,000.00
dated December 23, 2005
and recorded in the land records
of the Town of Fairfield, Connecticut
on December 29, 2005 at 9:40 AM
and assigned to
by instrument dated
and recorded in said
land records on at

5. The land referred to in this policy is known as
963 Fencerow Drive, Fairfield, Connecticut
and is more particularly described in said mortgage. A copy of said description is attached hereto as Schedule C.

Countersigned and validated:
By ______________________
Signature of Issuing Attorney
George Wolf
Please Print or Type Name of Issuing Attorney

Policy not valid unless Schedule B - Part I attached.

Policy No.
MP. 2203101

# MORTGAGEE TITLE INSURANCE

## SCHEDULE B - PART I - As to Insert One

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise by reason of:

1. The lien for all municipal taxes on the List of October 1, 2004 and thereafter. This policy insures that said taxes are current and that the next installment payment is not yet due and payable.

There are no additional Exceptions from Coverage

To the extent that they are checked, the following standard endorsements are incorporated by reference as if they were attached to the policy.

__ ALTA Endorsement 4.1 - Condominium
__ ALTA Endorsement 6 - Variable Rate Mortgage
__ ALTA Endorsement 8.1 - Environmental Lien, with the word "None" inserted at the end of Paragraph (b)
__ CATIC E-15 - Affirmative Language (Secondary Mortgage Market Endorsement)

If Schedule B Part II Attached, Check Here ______

# SCHEDULE C
to policy

# CATIC

ALL THAT CERTAIN piece or parcel of land with the buildings and improvements thereon, situated in the Town of Fairfield, County of Fairfield and State of Connecticut more particularly referred to as "Lot A" as shown as a map entitled "Resubdivision for ARM Properties, Inc., Fairfield, Conn. January 19, 1988," Scale 1" = 60' prepared by the Huntington Company, Fairfield, Connecticut and recorded as Map 5703 of the Fairfield Land Records.

EXHIBIT “D”

# ADJUSTABLE RATE NOTE

## 12-MTA INDEX - PAYMENT AND RATE CAPS

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN 125.000% OF THE ORIGINAL AMOUNT (OR $ 6,500,000.00 ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

December 23, 2005 — Trumbull (City) — Connecticut (State)

963 Fencerow Drive, Fairfield, CT 06824
(Property Address)

008477

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 5,200,000.00 plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is American Home Mortgage Acceptance, Inc. ________ . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. First I will pay interest at a yearly rate of 1.750 %. The interest rate I will pay may change. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making payments every month. In this Note, "Payments" refer to Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I Will make my monthly payments on 1st day of each month beginning on February, 2006 , I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on January 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at PO Box 660029, Dallas, TX 75266-0029 ________, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ 18,576.66 , unless adjusted at an earlier time under Section 4(H) of this Note.

### (C) Payment Changes

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and Interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the 1st day of February, 2006, and on that day every month thereafter. Each such day is called a "Change Date"

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three and 600 Thousandths percentage points 3.600 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than Nine and 950 Thousandths percentage points 9.950 % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing February 1, 2007, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 day prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my Payments are changed earlier under Section 4(H) of this Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a

Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to 125.000% of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that 125.000% limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the Five anniversary of the due date of the first monthly payment, and on that same day every Five year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once for each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_______________ (Seal) -Borrower
Glenn L. Manigault, as Member of G.L.A.D ENTERPRISES, LLC

_______________ (Seal) -Borrower
Angela D. Simpson, as Member of G.L.A.D ENTERPRISES, LLC

_______________ (Seal) -Borrower
Glenn L. Manigault, Individually, as Guarantor

_______________ (Seal) -Borrower
Angela D. Simpson, Individually, as Guarantor

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

## Prepayment Fee Note Addendum

This Note Addendum is made this 23rd day of December, 2005 and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of American Home Mortgage Acceptance, Inc. (the "Lender") and dated as of even date herewith ( the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the SECOND anniversary of the date of the Note, the Prepayment Fee shall be equal to Two percent ( 2.000 %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

**NOTICE TO THE BORROWER**

**Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

(Seal) -Borrower
Glenn L. Manigault, as Member of G.L.A.D ENTERPRISES, LLC

(Seal) -Borrower
Angela D. Simpson, as Member of G.L.A.D ENTERPRISES, LLC

(Seal) -Borrower
Glenn L. Manigault, Individually, as Guarantor

(Seal) -Borrower
Angela D. Simpson, Individually, as Guarantor

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

STATE OF CONNECTICUT }
} ss. Fairfield
COUNTY OF FAIRFIELD }

I, Angelina Valentino, Asst. Town Clerk of the Town of Fairfield, duly appointed and qualified according to law, and having custody of the seal of the Town of Fairfield, hereby certify that the annexed instrument is a true copy from the records of said Town, and that the original instrument is recorded in Volume 5206 Page(s) 147-154 of the Fairfield Land Records.

In Testimony Whereof I have hereunto set my hand and affixed the seal of the Town of Fairfield this 9th day of April 2015.

Asst. Town Clerk

# EXHIBIT “E”

| Form **14039** (September 2021) | Department of the Treasury - Internal Revenue Service **Identity Theft Affidavit** | OMB Number 1545-2139 |
|---|---|---|

This affidavit is for victims of identity theft. Do not use this form if you have already filed a Form 14039.

The IRS process for assisting victims selecting **Section B, Box 1** below is explained at irs.gov/victimassistance.

Get an IP PIN: We encourage everyone to opt-in to the Identity Protection Personal Identification Number (IP PIN) program. If you don't have an IP PIN you can get one by going to irs.gov/ippin. If unable to do so online, you may schedule an appointment at your closest Taxpayer Assistance Center by calling (844-545-5640). Or, if eligible you may use IRS Form 15227 to apply for an IP PIN by mail or FAX.

**Section A - Check the following boxes in this section that apply to the specific situation you are reporting** *(required for all filers)*

- [x] 1. I am submitting this Form 14039 for myself
- [ ] 2. This Form 14039 is submitted in response to a 'Notice' or 'Letter' received from the IRS
  - Provide 'Notice' or 'Letter' number(s) on the **line to the right** ______
  - Check box 1 in **Section B** and see special mailing and faxing instructions on reverse side of this form.
- [ ] 3. I am submitting this Form 14039 on behalf of my 'dependent child or dependent relative'
  - Complete **Section E** on reverse side of this form.
- [ ] 4. I am submitting this Form 14039 on behalf of another person *(other than my dependent child or dependent relative)*
  - Complete **Section E** on reverse side of this form.

**Section B – Reason For Filing This Form** *(required)*

Check only **ONE** of the following boxes that apply to the person listed in **Section C** below. If the taxpayer in 'Section C' has previously submitted a Form 14039 to the IRS on the same affected tax year(s), there's no need to submit another Form 14039.

- [ ] **1. Someone used my information to file taxes, including being incorrectly claimed as a dependent**
- [ ] **2. I don't know if someone used my information to file taxes, but I'm a victim of identity theft**

**Provide an explanation of the identity theft issue, how it is related to your tax account, how you became aware of it and provide relevant dates.** If needed, attach additional information and/or pages to this form.

SEE ATTACHED EXPLANATION.

**Section C – Name and Contact Information of Identity Theft Victim** *(required)*

| Victim's last name | First name | Middle initial | **Taxpayer Identification Number** *(provide 9-digit Social Security Number)* |
|---|---|---|---|
| MANIGAULT | GLENN | L | [redacted] - [redacted] |

| **Current mailing address** *(apartment or suite number and street, or P.O. Box)* If deceased, provide last known address | Current city | State | ZIP code |
|---|---|---|---|
| 963 FENCE ROW DRIVE | Fairfield | CT | 06824 |

**Tax Year(s) you experienced identity theft** *(if not known, enter 'Unknown' in one box below)*

| 2005 | 2006 | 2007 | 2008 | | | | |
|---|---|---|---|---|---|---|---|

**What is the last year you filed a return** 2019

| **Address used on last filed tax return** *(if different than 'Current')* | City *(on last tax return filed)* | State | ZIP code |
|---|---|---|---|
| | FAIRFIELD | CT | 06824 - |

| **Names used on last filed tax return** *(if different than 'Current')* | **Telephone number with area code** *(optional)* If deceased, indicate 'Deceased' Home phone number | Cell phone number | Best time(s) to call |
|---|---|---|---|
| | | 203-556-7600 | Afternoon |

**Language in which you would like to be contacted** ☑ English ☐ Spanish

**Section D – Penalty of Perjury Statement and Signature** *(required)*

Under penalty of perjury, I declare that, to the best of my knowledge and belief, the information entered on this Form 14039 is true, correct, complete, and made in good faith.

| **Signature of taxpayer, or representative, conservator, parent or guardian** | Date signed |
|---|---|
| Glenn L. Manigault | |

**SECTION B**

**Provide an explanation of the identity theft issue, how it is related to your tax account, how you became aware of it and provide relevant dates.** If needed, attach additional information and/or pages to this form.

In 2005, I, Glenn L. Manigault received an advertisement in the mail offering to refinance mortgages at a 1% interest rate. The name of the mortgage company was American Home Mortgage Acceptance, Inc. ("AHMA"), and it provided a toll free number to call. I called the toll free number and spoke to a representative. The representative offered a no-document refinance, meaning all I had to provide was my name, address, social security number and pay for a current appraisal. I was not required, nor did I fill out, an application.

I was approved for a refinance of my mortgage on my home, located at 963 Fence Row Drive, Fairfield, CT 06824. The date of the scheduled real estate closing was December 23, 2005. I retained an attorney for the closing named George Wolf. The mortgage company, AHMA, requested that Attorney Wolf also represent AHMA.

On December 23, 2005 the scheduled closing had been delayed several times that day by Attorney Wolf, as he stated he was waiting for the closing documents from AHMA to arrive. Attorney Wolf finally contacted me and asked that I be at his office by 5:00pm. I arrived at 5:00pm and waited in his office. Attorney Wolf escorted me to his conference room, and the time was approximately 5:15pm. Attorney Wolf told me we didn't have a lot of time to complete the closing because he had to be at the bank before 6:00pm. Attorney Wolf had already marked and flagged the signature pages, and said we did not have time to review the pages. So I started signing the pages as he turned to them. I asked Attorney Wolf for a copy of the closing documents. Attorney Wolf told me he did not have time to have copies made, and that he would mail me copies of the closing documents sometime in the next few months. I eventually received copies of the closing documents, sometime during the Spring of 2006.

In 2008, I found out that AHMA had filed for bankruptcy and was going out of business. AHMA was being liquidated. An attorney advised me to review my closing documents and 1) see if there is any recourse for homeowners if the mortgage company goes out of business, and 2) ask for the return of the original promissory note because I would need that document if I ever decided to sell my home. Upon review of the closing documents, I discovered an Internal Revenue Service Form W-9, **REQUEST FOR TAXPAYER IDENTIFICATION NUMBER AND CERTIFICATION** (IRS Form W-9 attached as **"Exhibit 1"**). The requestor's name and address are listed on the form -

AHMA, Inc., 538 Broadhollow Road, Melville, NY 11747. My name, Glenn L. Manigault is not listed under Name, but is listed under Business name. Next to check appropriate box, the box checked is Corporation. Under Address is my personal address - 963 Fence Row Drive, Fairfield, CT 06824.

Part 1 is **Taxpayer Identification Number (TIN).** In the box labeled **Social Security Number**, that box is blank. In the box underneath, labeled **Employer Identification Number**, is my Social Security Number listed as [redacted]. The mortgage company, AHMA, took the personal identity of Glenn L. Manigault and listed it as a Business Name, and took his Social Security Number (xxx-xx-xxxx) and fraudulently converted it into a Employer Identification Number (xx-xxxxxxx).

Glenn L. Manigault had no idea, nor any knowledge, that the mortgage company, AHMA, fraudulently stole his personal identity and used it to create a fake business name, and fraudulently converted his personal social security number into a fake Employer Identification Number, both of which do not exist, in the origination and approval of this fraudulent refinanced mortgage transaction.

Upon realizing the fraud that had been committed, Glenn L. Manigault contacted the mortgage company, AHMA, and asked to speak to a manager. I informed the manager that not only did I find out AHMA filed for bankruptcy and was going out of business, but I informed the manager that my personal identity had been fraudulently converted (stolen) and used to approve a mortgage that never should have been approved. I detailed several closing documents that contained fake and false information, including the IRS Form W-9 that falsely converted my personal information. I demanded that AHMA immediately CEASE AND DESIST, and I demanded that AHMA return the promissory note I signed on December 23, 2005 or I would be bringing legal action against AHMA. The manager said I have documented your request, and will forward it to the proper departments. The manager also told Glenn L. Manigault, that if the promissory note is returned back to you, it means your request has been granted, and the mortgage has been canceled, with no further obligations.

In 2009, Glenn L. Manigault received the original promissory note he signed back in 2005. Since the promissory note was returned and all obligations regarding the AHMA mortgage were canceled, Glenn L. Manigault did not pursue any further legal actions.

Glenn L. Manigault is filing this **IRS Form 14039, Identity Theft Affidavit**, because he believes he was the victim of Identity Theft. Multiple mortgages were created by AHMA and Attorney George Wolf from the fraudulent conversion of Glenn L. Manigault's personal information, and he had no knowledge of the fraud committed.

Exhibit 1

Form **W-9**
(Rev. January 2002)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

Give form to the requester. Do not send to the IRS.

See Specific Instructions on page 2. Print or type

Name

Business name, if different from above

Glenn L. Manigault

Check appropriate box: ☐ Individual/Sole proprietor ☒ Corporation ☐ Partnership ☐ Other ▶ ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

963 Fencerow Drive

City, state, and ZIP code

Fairfield, CT 06824

Requester's name and address (optional)

American Home Mortgage Acceptance, Inc.
538 Broadhollow Road
Melville, NY 11747

List account number(s) here (optional)

## Part I Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 2.

Note: *If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.*

Social security number

or

Employer identification number

[redacted]

## Part II Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

**Sign Here** Signature of U.S. person ▶ Glenn L Manigault Date ▶ 12/23/05

## Purpose of Form

A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee.

If you are a foreign person, use the appropriate Form W-8. See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities.

Note: *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments after December 31, 2001 (29% after December 31, 2003). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or
2. You do not certify your TIN when required (see the Part II instructions on page 2 for details), or
3. The IRS tells the requester that you furnished an incorrect TIN, or
4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or
5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions on page 2 and the separate **Instructions for the Requester of Form W-9.**

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Department of the Treasury
Internal Revenue Service
Fresno CA 93888-0025

9590 9402 6726 1060 8623 32

2. Article Number (Transfer from service label)

7021 0950 0001 3341 0057

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☑ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- Delivery Restricted Delivery
- Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Fresno, CA 93888 OFFICIAL USE

7021 0950 0001 3341 0057

| | |
|---|---|
| Certified Mail Fee | $3.75 |
| Extra Services & Fees (check box, add fee as appropriate) | $3.05 |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ |
| ☐ Adult Signature Restricted Delivery | $ $0.00 |
| Postage | $ $0.78 |
| Total Postage and Fees | $ $7.58 |

Postmark Here
01/25/2022

Sent To Department of the Treasury Internal Revenue Service
Street and Apt. No., or PO Box No.
City, State, ZIP+4® Fresno CA 93888-0025

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

Tracking #:
70210950000133410057
Return Receipt $3.05
Tracking #:
9590 9402 6726 1060 8623 32
Total $7.58

Grand Total: $7.58

Cash $20.00
Change -$12.42

USPS is experiencing unprecedented volume increases and limited employee availability due to the impacts of

EXHIBIT “F”

Receipt # 72405
Instr # 2022-1449
VOL 6284 PG 321
02/23/2022 10:42:17 AM
2 Pages
LIS PENDENS
Elizabeth P. Browne, Fairfield Town Clerk

**DOCKET NO.: FBT-CV-16-6059644-S** :

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR AMERICAN HOME MORTGAGE INVESTMENT TRUST 2006 -1, MORTGAGE-BACKED NOTES, SERIES 2006-1** : **J.D. OF FAIRFIELD**

**VS.** : **AT BRIDGEPORT**

**G.L.A.D. ENTERPRISES, LLC ET AL** : **FEBRUARY 22, 2022**

**NOTICE OF LIS PENDENS FILED BY GLENN L. MANIGAULT**

KNOW ALL MEN BY THESE PRESENTS:

Notice is hereby given of the pendency of a civil action wherein Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-1, located in the Town of West Palm Beach, County of Palm Beach, and the State of Florida, is the plaintiff and G.L.A.D. Enterprises, LLC, Glenn L. Manigault, All American Landscape & Design, Inc., and The Ridge Homeowner's Association, Inc. are the defendants, brought by writ dated September 8, 2016, made returnable to the Superior Court for the Judicial District of Fairfield on October 11, 2016 which action is brought to foreclose a certain mortgage from G.L.A.D. Enterprises, LLC to Mortgage Electronic Registration Systems, Inc., as nominee for American Home Mortgage Acceptance, Inc. dated December 23, 2005 and recorded December 29, 2005 in Vol. 3684 at Page 286 of the Fairfield Land Records, and to obtain possession of the mortgaged premises.

Based on the fact that Defendant Glenn L. Manigault is the owner and holder of the original promissory note, recorded in the Town of Fairfield, CT Land Records, Volume 5206, Pages 147 - 154, Glenn L. Manigault makes the following claims:

1. Foreclosure of the mortgage(s);
2. Quiet Title;
3. Possession of the property;
4. Money damages against the Plaintiff, including:
    a. Treble damages;
    b. Punitive damages;
    c. Compensatory damages;

5. Reasonable attorney's fees for Glenn L. Manigault & G.L.A.D. Enterprises, LLC;

6. Interest;

7. Cost of suit;

8. Such other and further relief as the Court may deem just and equitable.

The property Glenn L. Manigault seeks an interest in and to is located in the Town of Fairfield, County of Fairfield and State of Connecticut, and is known as 963 Fence Row Drive, Fairfield, CT 06824, and is mort particularly bounded and described as set forth in Schedule A attached hereto. DATEd at Fairfield, CONNECTICUT, this 22d day Feb, 2022

THE DEFENDANT,
by: [signature]
Glenn L. Manigault

SCHEDULE A

All That Certain piece or parcel of land with the buildings and improvements thereon, situated in the Town of Fairfield, County of Fairfield and State of Connecticut more particularly referred to as "Lot A" as shown on a map entitled "Resubdivision for ARM Properties, Inc. Fairfield, Conn., January 19, 1988, "Scale 1" = 60 ', prepared by the Hinlington Company, Fairfield, Connecticut and recorded as Map 5703 of the Fairfield of the Fairfield Land Records.

RECEIVED FOR RECORD
02/23/2022 10:42:17 AM
Elizabeth P. Browne, Fairfield Town Clerk
[signature]

**STATE OF CONNECTICUT** }
**COUNTY OF FAIRFIELD** } ss:

# FAIRFIELD
# OFFICE OF TOWN CLERK

I, Elizabeth P. Browne, Town Clerk of said Town, duly elected and qualified according to law and having custody of the seal of said Town, hereby certify that the annexed instrument is a true copy from the **FAIRFIELD LAND RECORDS**, and that the original instrument from which said copy is taken recorded in

DESCRIPTION: LIS PENDENS
DATE: 02/23/2022
BOOK/PAGE: 6284 / 321

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed the seal of said Town of Fairfield this 23rd day of February 2022 .

Elizabeth P. Browne

Elizabeth P. Browne
Town Clerk
Town of Fairfield